| STATE OF NORTH CAROLINA | File No. 18 CVS 8269 |
|---|---|
| GUILFORD County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff |
|---|
| THERESA SCHMITZ |
| Address |
| c/o JONATHAN WALL, ESQ.; 301 North Elm Street, Suite 800 |
| City, State, Zip |
| Greensboro       NC    27401 |

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| ALAMANCE-BURLINGTON BOARD OF EDUCATION | |
| | Date(s) Subsequent Summons(es) Issued |
| d/b/a ALAMANCE-BURLINGTON SCHOOL SYSTEM | |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| ALAMANCE-BURLINGTON BOARD OF EDUCATION<br>c/o Ms. Allison Gant, Chair<br>1712 Vaughn Road<br>Burlington     NC    27217 | ALAMANCE-BURLINGTON BOARD OF EDUCATION<br>c/o Dr. W. Bruce Benson, Superintendent<br>1712 Vaughn Road<br>Burlington     NC    27217 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| MR. JONATHAN WALL<br>HIGGINS BENJAMIN, PLLC<br>301 N. Elm Street, Suite 800<br>Greensboro     NC    27401 | 10/5/18 | 4:35 ☐ AM ☒ PM |
| | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

| NORTH CAROLINA | GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| GUILFORD COUNTY | FILE NO. 18 CVS 8269 |

2018 OCT -5 P 4: 35

GUILFORD CO., C.S.C.

THERESA SCHMITZ,  )
                     Plaintiff  )
                     )
v.  )  **COMPLAINT**
                     )
ALAMANCE-BURLINGTON BOARD  )
OF EDUCATION d/b/a ALAMANCE-  )
BURLINGTON SCHOOL SYSTEM,  )
                     )
               Defendants  )

## PRELIMINARY STATEMENT

1. This is a civil rights action for the denial of equal employment opportunity through wrongful discharge, discrimination, and retaliation in violation of (a) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended; and (b) the public policy of the state of North Carolina as evidenced by N.C.G.S. § 143-422.1 *et seq.*, and other bases.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367; 42 U.S.C. § 12117(a). The unlawful employment practices and discrimination alleged below were committed within the Middle District of North Carolina.

## PARTIES

3. Plaintiff Theresa Schmitz is a citizen and resident of Wake County, North Carolina.

4. Upon information and belief, Defendant Alamance Burlington Board of Education d/b/a Alamance Burlington School System (herein "Defendant ABSS") is a body

corporate having general control and supervision of all matters pertaining to the public schools within the Alamance-Burlington School System and operating as the Alamance-Burlington School System, operating all public schools within the City of Burlington and Alamance County, North Carolina.

## FACTUAL ALLEGATIONS

5. Upon information and belief, Defendant ABSS employees over 500 persons and is a covered entity under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as amended.

6. On or about October 26-27, 2016, Defendant ABSS hired Plaintiff Theresa Schmitz to work as a fourth-grade teacher at the Sylvan Elementary School located in Snow Camp, North Carolina.

7. Plaintiff performed satisfactorily through the first months of her employment and received positive feedback on her performance.

8. In November 2016, Plaintiff's minor son was diagnosed with a brain tumor and required emergency brain surgery on November 23, 2016. He was released from the hospital on November 28, 206, and Plaintiff returned to work on November 29, 2016.

9. Plaintiff's son was further diagnosed with NF1 (neurofibromatosis Type 1), also known as von Recklinghausen's Disease, is a rare genetic disorder causing benign growths in various parts of the body, including the brain and optic nerves. In addition to the brain tumor, Plaintiff's son developed optic gliomas on his optic nerves, and he suffered speech delays and continuing language challenges, processing skills deficits, and learning challenges as a result of the disease. He has been diagnosed with developmental disability due to NF1. His condition affects several major life functions including but not limited to seeing, thinking, and learning,

2

and after his surgery he was unable to walk or care for himself, and he has required regular MRIs and chemotherapy as a result of the disease.

10. Plaintiff's minor son suffers from a disability and has a record of a disability.

11. From November 29 to December 5, 2016, Plaintiff requested and was approved to leave school at 2:30pm, so she could care for her son at home while her spouse reported for work. Classes ended at 2:30pm, but the official end of the teacher school day was 3:15pm. Her principal, Mark Gould granted permission for her to leave work early that work.

12. On or about December 5, 2016, Plaintiff took her son his doctor to have stitches in his head from the surgery removed. At that time, the physician told Plaintiff that her son would be incapacitated for some time and could not return to school for several weeks.

13. Plaintiff emailed Principal Gould and explained the situation and requested to leave early at 2:30pm for one more week. When she received no response, she called and left a message on Principal Gould's cell-phone voice mail. Principal Gould eventually responded electronically and explained that he could not talk because he was at a child's basketball game, but that they would discuss it tomorrow.

14. The next day, Plaintiff did not hear from Principal Gould, and at 2:30pm she left to care for her son, believing it was okay. She later received an email from Principal Gould inquiring where she had been, and stating that he had not seen her at bus duty at 2:30pm that afternoon. Plaintiff replied that she had explained her situation with her son and thought it was okay to leave at 2:30pm. When she received no response back, she became very concerned. She contacted Principal Gould and told him that she would not be at school the following day.

15. The next day Plaintiff contacted Defendant's human resources ("HR") department, and explained her situation with her son and the need to care for him. She told them

3

she though Principal Gould was bullying her and retaliating against her for caring for her disabled son who had been diagnosed with a genetic condition.

16. Defendant HR department contacted Plaintiff later that day and informed her that she was not permitted to leave at 2:30pm. They told her that instead, she had to take her leave in half-days, and she would only be paid for the half-days she worked. Plaintiff asked why she could not leave at 2:30pm and have per pay docked accordingly, and they did not offer any explanation. Plaintiff therefore worked only half days until the holiday break through December 16, 2016. After the holiday break, Plaintiff did not take – nor request – any more half days to care for her disabled son.

17. Despite Plaintiff's return to her regular work schedule in mid-December 2016, throughout January and February 2017, Principal Gould began a course of retaliation against Plaintiff.

18. Principal Gould began nitpicking Plaintiff and holding her to a much higher standard than the other teachers at the school. She was scolded for viewing a work-related email (although Principal Gould made it sound like it was personal email), using the restroom, and sending children to the principal's office for behavior concerns (which is the correct protocol).

19. Plaintiff again complained to HR and explicitly stated she felt she was being bullied and retaliated against because of her association with her disabled child.

20. Again in retaliation, Principal Gould placed Plaintiff on a Performance Improvement Plan (PIP) on or about March 14, 2017. The PIP misstated facts and held Plaintiff to a much higher standard than other teachers.

21. Plaintiff successfully completed the PIP, which entailed much busy-work, and she attended to all the concerns raised in the PIP and subsequent correspondence.

4

22. In April 2017, Plaintiff was performing satisfactorily. Principal Gould later wrote that during the year, Plaintiff:

> ....has very capably taught math, reading, social studies, and science.
>
> Ms. Schmitz is to be commended for her professionalism, concern for her students, and quality of instruction. She plans well and works diligently at being organized. Her preparation each day is thorough and the results, evident. Her assignments and assessments are well-conceived, quickly corrected, and promptly returned. I have found Ms. Schmitz to be uniquely resourceful and adaptive.
>
> Student respect is obvious in her classroom. She deeply cares about her students and they look to her for approval and guidance. Her approach to teaching has generated a warm and close rapport with her classes as well as our faculty.
>
> Ms. Schmitz has the skills to be an outstanding teacher...

23. Nevertheless, on or about May 12, 2017, Plaintiff was called into a meeting with HR and Principal Gould and handed a pre-drafted "letter of resignation" for her to sign, effective at the end of the school year. Plaintiff was told that if she did not sign and turn in the resignation letter, she would be "put on a list she did not want to be on," presumably a list of terminated employees or employees who were not eligible for hire within the State's public school systems, thereby jeopardizing her entire career choice.

24. By presenting Plaintiff with the forced resignation letter, Defendant constructively terminated Plaintiff's employment.

25. Because of the pre-termination retaliation and the wrongful termination, and the financial difficulties it caused, Plaintiff suffered substantial lost income, benefits, shock, mental anguish, and frustration.

26. Plaintiff filed a timely charge with the Employment Opportunity Commission alleging ADA violations and retaliation, and she received a "Right-to-Sue" letter on July 14, 2018, or later.

COUNT I – ASSOCIATIONAL DISCRIMINATION IN VIOLATION OF ADA

27. Plaintiff restates and incorporates by reference in full the allegations contained in paragraphs 1-26.

28. Defendant is an employer subject to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

29. Plaintiff's son suffers from a disability that affects a major life function, and he has a history of disability.

30. Plaintiff suffered adverse employment actions – changes to her schedule and responsibilities, being placed on a PIP, and being forced to resign, among others – because of her specific association with her disabled son. Plaintiff was treated differently than similarly situated employees in that other employees not associated with a disabled family member were regularly permitted to take sick leave in less-than-half-day increments on temporary bases, and they were not retaliated against for talking leave or because of anticipated future leave requirements.

31. Plaintiff is entitled to reinstatement to her job, back pay, interest on back pay, front pay, and other benefits of employment, including but not limited to vacation pay, sick pay, health insurance benefits, and savings plan/retirement benefits. Plaintiff also suffered substantial mental anguish. Plaintiff's losses are in an amount greater than $25,000.00.

COUNT II – RETLIATION IN VIOLATION OF THE ADA

32. Plaintiff restates and incorporates by reference in full the allegations contained in paragraphs 1-31.

33. Plaintiff reasonably believed that the ADA protected her both from (a) requesting reasonable accommodations to care for her disabled son (b) complaining that her supervisor was retaliating against her for making requests for accommodations to care for her disabled son.

34. Plaintiff engaged in conduct protected by the ADA.

35. Plaintiff suffered adverse employment actions after she engaged in conduct protected by the ADA, including termination of employment.

36. Plaintiff suffered the adverse employment actions because of her protected conduct, as evidenced, in part, by the temporal proximity of the events, the negative citation of her leave to care for her disabled son, the Principal's negative animus displayed to her disability-related requests, the request for her to resign when she was performing satisfactorily.

37. Plaintiff suffered substantial injury on account of Defendant's retaliation, and she is entitled to reinstatement to her job, back pay, interest on back pay, front pay, and other benefits of employment, including but not limited to vacation pay, sick pay, health insurance benefits, and savings plan/retirement benefits. Plaintiff also suffered substantial mental anguish. Plaintiff's losses are in an amount greater than $25,000.00.

COUNT III – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

38. Plaintiff restates and incorporates by reference in full the allegations contained in paragraphs 1-37.

39. The public policy of North Carolina, as expressed in N.C G.S. § 143-422.2, is "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race...[and]...handicap by employers which regularly employ 15 or more employees," as well as the North Carolina Persons with Disabilities Protection Act (NCPDPA), N.C.G.S. § 168A-1 *et seq.*, which prohibits

discrimination in employment on the basis of handicap. Plaintiff's termination also violated the established public policy of North Carolina as expressed in other statutes and regulations, including but not limited to N.C.G.S. §§ 95-28.1A, 115C-302.1, 16 N.C. A.C. § 06C.0402, and Policy 5000 of the Alamance-Burlington School System Policy Manual.

40. Plaintiff was retaliated against and wrongfully discharged from her employment because of the genetic information about her son and his disability, and for exercising her rights to take leave protected under state law, in violation of North Carolina's public policy.

41. As a result of Defendant's actions, as described herein, Plaintiff has suffered damages in excess of $25,000.00.

42. Defendants actions as herein described were malicious and in willful and wanton disregard of Plaintiff's rights.

WHEREFORE, Plaintiff hereby requests the following relief:

(1) That Plaintiff recover compensatory damages in excess of $25,000.00;

(2) That Plaintiff be reinstated to her position of employment once reasonable measures have been undertaken to protect Plaintiff from retaliatory actions;

(3) That Plaintiff recover punitive damages in an amount to be determined by the jury;

(4) That Plaintiff recover pre- and post judgment interest on amounts awarded;

(5) That Plaintiff recover attorney fees as provided by federal and state law including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988;

(6) That Plaintiff recover the costs of this action; and

(7) That Plaintiff recover any other relief that this Court deems just and proper.

Plaintiff hereby demands a trial by jury on all issues presented herein.

This, the 5th day of October, 2018.

OF COUNSEL:
HIGGINS BENJAMIN, PLLC
301 N. Elm Street, Suite 800
Greensboro, NC 27401-2260
(336) 273-1600
jwall@greensborolaw.com

_____
Jonathan Wall
N.C. State Bar No. 22839

*Attorney for Plaintiff*

9